IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WWP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 8:07CV370 |
| | ) | |
| v. | ) | |
| | ) | |
| WOUNDED WARRIORS, INC., | ) | MEMORANDUM OPINION |
| | ) | |
| Defendant. | ) | |

## I. INTRODUCTION

This matter is before the Court on plaintiff WWP, Inc.'s ("WWP") motion for preliminary injunction (Filing No. 11). WWP requests that the Court enter a preliminary injunction proscribing Wounded Warriors, Inc. ("Wounded Warriors"), from infringing upon its trademark until the trial of this lawsuit. Upon review of motion, the briefs and evidentiary submissions of the parties, and the arguments of counsel, the Court finds that a preliminary injunction should be issued as set forth below.

## II. FACTS

WWP and Wounded Warriors are both nonprofit corporations offering charitable services to injured veterans. The parties dispute which organization began operations first, but do not dispute that Wounded Warriors started as Wounded Warrior Hospital Fund in Landstuhl, Germany, providing items such as televisions, compact disk players, compact disks, digital video disks, and other related items for hospital patients at the

Landstuhl Regional Medical Center to use.  WWP began operations by providing injured service members with backpacks filled with essential care and comfort items.  WWP has a registered service mark depicting one soldier carrying another on his back with the words "wounded warrior project" below.  Today, WWP has grown larger than Wounded Warriors, with annual donations exceeding $10,000,000.00 for WWP and $400,000.00 for Wounded Warriors.  WWP also expends considerable resources in advertising and marketing its services, while Wounded Warriors markets itself solely on the internet.

The parties dispute the exact date, but at some point during 2003-2004, Wounded Warriors incorporated itself and registered the internet universal resource locator ("URL") or web address of http://www.woundedwarriors.org/.  Initially, relations between the parties were good, with Wounded Warriors redistributing funds it had collected in part to WWP.  The parties came into conflict when WWP became aware that Wounded Warriors was operating in the United States and that its mission had changed to that of providing condominium retreats for injured veterans and their families.

WWP sued Wounded Warriors on September 17, 2007, alleging trademark infringement, unfair competition, and deceptive trade practices (*See* Filing No. 1).  WWP moved for a preliminary injunction on October 17, 2007 (*See* Filing No. 11),

and the record was supplemented several times (*See* Filing Nos. 32, 34, 29, 57) prior to any hearing on the motion. The Court held its first hearing on this motion on January 29, 2008, but during the hearing the parties agreed to enter mediation. Negotiations eventually broke down and after additional supplementation of the record (Filing Nos. 74 and 80), the Court held a second hearing on the motion on June 16, 2008.

### III. DISCUSSION

A. Preliminary Injunction Factors

WWP seeks a preliminary injunction in this motion. "Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C. L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). No single factor is determinative, and the motion will not be denied merely because the plaintiff cannot prove probability of success on the merits by some mathematical formula. *Id.* The burden of proving whether a preliminary injunction is warranted is heavier where, as here, granting the preliminary injunction could in effect give the movant substantially the relief it would obtain after a trial on the merits. *Calvin Klein Cosmetics Corp. v.*

*Lenox Labs, Inc.*, 815 F.2d 500, 503 (8th Cir. 1987).  Here, the best starting place for analysis is the likelihood of success on the merits factor, because while it is only one of the *Dataphase* factors to be considered, an injunction cannot issue if there is no chance of such success.  *Mid-America Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 972 (8th Cir. 2005).

B. Likelihood of Success on the Merits

    1. Trademark Infringement

        WWP asserts a claim against Wounded Warriors for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq*.  In order to prevail on a claim of trademark infringement, WWP must prove that "(1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services."  *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277 (3d Cir. 1991).  Here, there is no question regarding confusion.  Colonel Folsom admitted in his deposition that some people mistakenly donated to Wounded Warriors thinking it was WWP.  (Folsom Dep. 190:20-192:11.)  Counsel for Wounded Warriors also conceded before the Court that there is donor confusion in this case.

        Whether WWP owns the mark is a closer question, however.  It is undisputed that WWP owns a service mark with the

-4-

words "wounded warrior project" appearing on it.[1] *See* U.S. Trademark No. 3,001,447 (registered Sep. 27, 2005) (Filing No. 41-2, at 2). However, the mark contains a disclaimer that "no claim is made to the exclusive right to use 'wounded warrior project' apart from the mark as shown." Under 15 U.S.C. § 1056(a), the United States Patent and Trademark Office may require an applicant for a trademark to, or an applicant may voluntarily choose to, "disclaim an unregistrable component of a mark otherwise registrable." Once a disclaimer is effected "an applicant has no exclusive rights to the disclaimed component apart from the composite mark." *In re Savin Corp.*, 69 Fed.Appx. 997, 999 (Fed. Cir. 2003) (citing *Dena Corp. v. Belvedere Int'l, Inc.*, 950 F.2d 1555, 1560 (Fed. Cir. 1991)). However, § 1056(b) states that "[n]o disclaimer . . . shall prejudice or affect the . . . registrant's rights then existing or thereafter arising in the disclaimed matter . . . ." Therefore the existence of the disclaimer indicates that WWP's registered trademark confers it no exclusive rights in the words "wounded warrior project," but it is not evidence that such rights do not otherwise exist independent of the registration.

WWP claims the right to sue Wounded Warriors under 15 U.S.C. § 1114, and also entitlement to presumptions of validity,

---

[1] The mark consists of a relief image of one soldier carrying another on his back with the words "wounded warrior project" below.

ownership, and exclusive right to use in commerce.  (*See* Filing No. 12, at 9-10.)  However, these rights are available only to owners of registered trademarks, and as discussed above, WWP's registered mark does not include the exclusive use of the words "wounded warrior project."  Therefore the presumptions do not apply with respect to that term, and it is necessary to determine whether WWP could own a valid common law trademark in it.

Trademarks are classified into four categories, from least to most protectable: generic, descriptive, suggestive, and arbitrary.  *See General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987).

> A generic mark refers to the common name or nature of an article, and is therefore not entitled to trademark protection.  A term is descriptive if it conveys an 'immediate idea of the ingredients, qualities or characteristics of the goods,' and is protectible [sic] only if shown to have acquired a secondary meaning.  Suggestive marks, which require imagination, thought, and perception to reach a conclusion as to the nature of the goods, and arbitrary or fanciful marks, are entitled to protection regardless of whether they have acquired secondary meaning.

*Frosty Treats, Inc. v. Sony Computer Entm't Am., Inc.*, 426 F.3d 1001, 1005 (8th Cir. 2005) (internal citations omitted).  Here, WWP argues that "wounded warrior project" is a suggestive term because "[d]onors [who are] approached with the name . . .

without any context would immediately sense different things and would not likely perceive the charitable mission" of the organization.  (Filing No. 25, at 7.)  The Court disagrees.  The charitable mission of the organization is readably apparent in the name:  helping wounded warriors.  Imagination, thought, and perception are not required to reach that conclusion.

WWP argues that the mark is not descriptive because it does not describe in detail the eight broad categories of assistance that WWP provides.  (*See* Filing No. 25, at 9.)  It is not necessary for a mark to describe a thing in extreme detail in order for it to be descriptive.  For example, in *Frosty Treats*, the phrase "frosty treats" was held to be descriptive, if not generic, because the term "conveys an immediate idea of the qualities and characteristics of the goods that it sells." *Frosty Treats*, 426 F.3d at 1005.  Frosty treats was descriptive despite the fact that the mark did not explain that it sold ice cream cones and popsicles from trucks.  Similarly, "wounded warrior project" is descriptive despite the fact that the term does not make explicit, to take just one example, that it "provide[s] benefit counselors to wounded and/or disabled U.S. servicemen and servicewomen to assist patients as they return to their communities and civilian life . . . ."  (Filing No. 25, at 9.)  To require this level of detail would deprive the category "descriptive" of all meaning.

Because the Court has found "wounded warrior project" descriptive, any trademark thereon depends for its validity on whether the term has acquired a secondary meaning.

> Secondary meaning is an association formed in the minds of consumers between the mark and the source or origin of the product.  To establish secondary meaning, [WWP] must show that ["wounded warrior project"] serves to identify its goods and distinguish them from those of others.  Secondary meaning does not require the consumer to identify a source by name but does require that the public recognize the mark and associate it with a single source.

*Frosty Treats*, 426 F.3d at 1005 (internal citations omitted). Here, WWP has failed to establish secondary meaning.  Although it has spent considerable sums on advertising and marketing (*See generally* Giordano Aff., Filing No. 13-1, at ¶¶ 7-9), there is insufficient evidence in the record to suggest that this spending has created secondary meaning.  There has been no evidence of an exclusive association in the minds of consumers between "wounded warrior" and WWP.  Moreover, the defendant has identified several other organizations, media articles, and internet sites unaffiliated with WWP that use the term "wounded warrior."  (*See* Def.'s Supp. Br. in Opp. to Mot. for Prelim. Inj., Filing No. 80-2, at 12-14.)  Based on the evidence presented, the Court finds that while the public may recognize the terms "wounded warrior," or "wounded warrior project," it does not presently associate

-8-

those terms with a single source.  Therefore it cannot be said that the term has acquired secondary meaning.  Because the Court has found that the term is descriptive and lacks secondary meaning, it also finds that any claim to the exclusive right to use the term "wounded warrior project" is invalid.[2]

Wounded Warriors argues that the mark is generic. Inasmuch as the Court has found that the mark is descriptive but that it lacks secondary meaning, it is unnecessary for the Court to determine whether it is generic.  It is also unnecessary for the Court to examine questions related to priority of use and geographic scope because such issues are irrelevant given the likelihood that any trademark on the term would be invalid. Although consumer confusion is manifest, WWP is unlikely to be able to prove either that the term "wounded warrior project" is a valid and protectable mark or that WWP owns it.  Therefore the Court finds that WWP is unlikely to succeed on the merits of this claim.

2. Unfair Competition

WWP also claims that Wounded Warriors has engaged in unfair competition in violation of 15 U.S.C. § 1125(a). "Trademark infringement is but a part of the broader law of

---

[2] This ruling does not invalidate U.S. Trademark No. 3,001,447 (registered Sep. 27, 2005), which applies to an image and makes no claim to the exclusive right to use the term "wounded warrior project" apart from how it is shown in the image.

unfair competition, and facts supporting a suit for infringement and one for unfair competition are substantially identical." *Heaton Distrib. Co. v. Union Tank Car Co.*, 387 F.2d 477, 483 (8th Cir. 1967).  Thus, for the same reasons that the Court finds it unlikely that WWP will succeed on the merits of its trademark infringement claim, it finds that WWP is unlikely to succeed on the merits of its unfair competition claim.

    3. Nebraska Deceptive Trade Practices Act ("NDTPA")

        WWP asserts that Wounded Warriors is engaged in deceptive trade practices in violation of the Nebraska Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302.  Injunctive relief is authorized under § 87-303(a) of the Act "under the principles of equity and on terms that the court considers reasonable." Specifically, WWP accuses Wounded Warriors of passing off its goods or services as those of WWP's in violation of Neb. Rev. Stat. § 87-302(1); causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services in violation of § 87-302(2); and causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another in violation of § 87-302(3).  (*See* Complaint, Filing No. 1, at 7-8.)  Upon review of the evidence to date in this case, the Court finds that WWP is likely to succeed on the merits of this claim.

Wounded Warriors's sole argument that WWP is unlikely to succeed on the merits of this claim is that it fails because the trademark claim fails.  (Def.'s Br. in Opp. to Mot. for Prelim. Inj., Filing No. 21, at 22.)  Wounded Warriors cites *Midway Mfg. Co. v. Dirkschneider*, 571 F.Supp. 282 (D. Neb. 1983), for the proposition that "[j]ust as with a claim for unfair competition, the elements of WWP's claim for federal trademark infringement are also required to support WWP's cause of action under the [NDTPA]."  (Filing No. 21, at 22.)  However, *Dirkschneider* does not support that proposition.  In that case, Judge Beam merely stated that "[t]he facts supporting defendants' liability for trademark infringement also support a cause of action under the [NDTPA] . . . ."  571 F.Supp. at 286.  Wounded Warriors's argument ignores the possibility that a factual situation could exist that violates the NDTPA but does not constitute trademark infringement.  The Court finds it likely that such a situation exists here.

C. Remaining *Dataphase* factors

Having determined that WWP is unlikely to succeed on the merits of the trademark and unfair competition claims, but is likely to succeed on the NDTPA claim, in order to determine whether injunctive relief should be granted the remaining *Dataphase* factors must be analyzed in the context of that claim.

1. Irreparable Harm

The first remaining factor for the Court to consider under *Dataphase* is "the threat of irreparable harm to the movant . . . ." *Dataphase*, 640 F.2d at 113. Wounded Warriors argues that "the evidence used by WWP to support its argument for irreparable harm amounts merely to a relatively insignificant economic loss in comparison to the $10,000,000.00 raised by WWP . . . ." (Def.'s Br. in Opp. to Mot. for Prelim. Inj., Filing No. 21, at 24.) That may be true, but it is beside the point. WWP relies upon statements by individuals that intended to donate to WWP, but instead mistakenly donated to Wounded Warriors. (*See, e.g.*, Filing No. 27-2.) For each consumer who complained that his donations were not going where he expected, it is likely that there are others who did not complain. It is also likely that still others continue to donate to a different organization than they intended and are unaware of it. Finally, the number of prospective donors who responded to WWP's advertising and marketing, but mistakenly visited Wounded Warriors's web page, cannot be determined. WWP correctly argues that "[l]oss of intangible assets such as reputation and goodwill can constitute irreparable injury." *Medicine Shoppe Intern., Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003) (citing *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002)). Because of the nature of the probable violation of the

NDTPA at issue here, WWP is unable to determine the exact amount of its economic damage, the damage to its reputation, or the damage to its goodwill.  Thus the Court finds that WWP would be irreparably harmed if injunctive relief is not awarded.

    2. Balance of hardships

The next factor to consider is "the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant . . . ." *Dataphase*, 640 F.2d at 113.  If Wounded Warriors violated the NDTPA, as appears probable here, WWP's hardship is that funds which should have been donated to it instead are donated to Wounded Warriors.  However, if the Court grants an injunction, Wounded Warriors argues that "the $400,000.00 [it] raises through its work per year would be completely abrogated . . . ."  (Def.'s Br. in Opp. to Mot. for Prelim. Inj., Filing No. 21, at 26.)  Complicating matters is the fact that it is unclear what portion of the funds raised annually by Wounded Warriors result from advertising and marketing by WWP.  Wounded Warriors does admit that at least some contributions were misdirected, and it experienced an increase in donations when WWP was featured on a national news program.  No hardship would be experienced by Wounded Warriors if only those donations which it obtained in violation of the NDTPA were enjoined.  However, as mentioned above, it is not possible to determine what the percentage of those donations are.  The Court

thus must balance WWP's hardship of having some of its funds wrongfully misdirected against Wounded Warrior's hardship of potentially losing a legitimate source of funds. Because Wounded Warriors probably created the confusion by violating the NDTPA, the Court finds that this factor narrowly favors WWP.

### 3. Public Interest

Finally, the Court must consider the public interest in whether the injunction should be granted. *Dataphase*, 640 F.2d at 113. WWP states that a preliminary injunction will eliminate the confusion caused by similarly named nonprofit organizations operating under a similar mission and promote the public's interest in ensuring that its contributions to charitable organizations are received by the correct charity. (Filing No. 12, at 16.) Wounded Warriors argues that because donations to it inure to the public benefit, that an injunction prohibiting it from further fund-raising and charitable work is contrary to the public interest. (Filing No. 21, at 26.) Both parties are correct. The Court finds that a properly tailored preliminary injunction can serve the public interest by reducing confusion while refraining from prohibiting further activity by Wounded Warriors. The public interest factor thus weighs in favor of granting injunctive relief.

D. Scope of Injunction

All four *Dataphase* factors support the issuance of a preliminary injunction on WWP's NDTPA claim.  However, having determined that injunctive relief is warranted on the NDTPA claim, the final question for the Court is what conduct should be enjoined.  WWP moves for an injunction prohibiting trademark infringement.  (Filing No. 11, at ¶ 12.)  However, the Court has determined that WWP's trademark probably does not encompass the words "wounded warrior project" and therefore an injunction against trademark infringement would be ineffectual here.  As mentioned above, Neb. Rev. Stat. § 87-303(a) states that "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable."

Wounded Warriors admits that consumer confusion between it and WWP exists and represents to the Court that in an effort to mitigate this confusion, Wounded Warriors has changed its name to Wounded Warriors Family Support and that its website, http://www.woundedwarriors.org/, "will no longer utilize its original URL . . . and though Wounded Warriors will continue to own said URL, no content whatsoever will appear thereon." (Filing No. 80, at ¶ 2.)  However, Wounded Warriors represented that these changes would be made "as of July 1, 2008," and as of

-15-

the date of this Memorandum Opinion, the URL is still operational.  This is of no small concern, because this website appears to the Court to be the instrumentality by which Wounded Warriors has harmed WWP.

In view of the foregoing, the Court finds that a preliminary injunction against the use of the http://www.woundedwarriors.org/ website by defendant Wounded Warriors is reasonable.  The Court further finds that this injunction should include language prohibiting Wounded Warriors from redirecting, linking, or otherwise transferring any visitors from http://www.woundedwarriors.org/ to any other website.  The Court also finds that the injunction should broadly prohibit any content whatsoever from appearing on http://www.woundedwarriors.org/.  Finally, the Court finds that any other web site operated by the defendant should include the following disclaimer: "THIS SITE IS NOT AFFILIATED WITH THE WOUNDED WARRIOR PROJECT."  This action is intended to mitigate consumer confusion until trial in this matter can be had.  Inasmuch as the Court has found that WWP likely does not hold a valid trademark on the words "wounded warrior project," it finds that enjoining Wounded Warriors from using its name would not be reasonable at this time.

E. Bond

Fed. R. Civ. P. 65(c) states that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined . . . ."  Here, the defendant has been generating $400,000.00 per year exclusively on its web site, http://www.woundedwarriors.org/, which will be shut down if the plaintiff posts its bond.  It is likely that some of the defendant's revenue was mistakenly donated to it, and also that the defendant's new URL address will bring in some funds.  However, the defendant is likely to be harmed by the loss of its web site because repeat donors will not locate it as easily and because a new web address may not be as prestigious as the current one.  In addition, if the defendant was wrongfully enjoined from using its web address, it will incur costs in reactivating and promoting it.  However, neither party made any presentation to the Court regarding this issue.  Accordingly, the Court will require each party to respond by noon on Friday, July 18, 2008, on the issue of the bond to be required by the Court.

## IV. CONCLUSION

Because plaintiff WWP is unlikely to succeed on the merits of either its trademark infringement claim or its unfair competition claim against Wounded Warriors, WWP's motion for a

-17-

preliminary injunction should be denied as it relates to those causes of action.  However, because WWP's motion for a preliminary injunction against Wounded Warriors on the NDTPA claim is likely to succeed on the merits because WWP is experiencing irreparable harm, and because the balance of hardships and public policy argue for injunctive relief, Wounded Warriors should be enjoined from using http://www.woundedwarriors.org until trial of this matter can be had, and any other web site Wounded Warriors uses should contain a disclaimer in order to mitigate consumer confusion between the two entities.  A separate order will be entered in accordance with this memorandum opinion after the parties' submission on the issue of the bond to be required by the Court.  That submission shall be made on or before noon Friday, July 18, 2008.

DATED this 14th day of July, 2008.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court